IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**BROOK HUFFMAN**,

                Plaintiff                              Civil No. 3:11-cv-01068-ST

             v.                             **FINDINGS AND**
                                                  **RECOMMENDATION**

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

                Defendant.

STEWART, Magistrate Judge:

      Plaintiff, Brook Huffman ("Huffman"), seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 USC §§ 401-33, and Supplemental Security

1 -  FINDINGS AND RECOMMENDATION

Income ("SSI") payments under Title XVI of the Act. 42 USC §§ 1381-83f. This court has jurisdiction under 42 USC § 405(g) (incorporated by 42 USC § 1382(c)(3)). For the following reasons, the Commissioner's decision should be affirmed.

## PROCEDURAL BACKGROUND

Born in 1963, Ms. Huffman alleges disability since September 7, 2007, due to a traumatic knee injury and arthritis. Tr. 31, 160.[1] She has a high school education (Tr. 166), and past work as a caregiver for elderly and disabled people and a school instructional assistant. Tr. 169.

The Commissioner denied Ms. Huffman's disability applications initially and upon reconsideration. Tr. 53-76. An Administrative Law Judge ("ALJ") held a hearing on June 29, 2010. Tr. 28-52. On July 1, 2010, the ALJ found Ms. Huffman not disabled. Tr. 14-23. The Appeals Council denied review of that decision on July 1, 2011. Tr. 1-3. The Appeals Council's decision is a final decision of the Commissioner, subject to review by this court. 20 CFR §§ 404.981, 422.210.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 CFR §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 US 137, 140 (1987). Each step is potentially dispositive. *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, then the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed on January 23, 2012 (docket # 12).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. Absent such a severe impairment, the claimant is not disabled. 20 CFR §§ 404.1509; 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the Commissioner's regulations. If it does, the claimant is disabled. 20 CFR §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his or her impairments. 20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p.

At step four, the ALJ uses the RFC to determine if the claimant can perform his or her past relevant work. If so, then the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of his or her past relevant work, then the ALJ proceeds to step five.

At step five, the ALJ must determine if the claimant is capable of performing work existing in the national economy. If not, then the claimant is disabled. 20 CFR §§ 404.1520(a)(4)(v), 404.1520(a)(4)(v), 416.920(a)(4)(v),416.920(f); *Yuckert*, 482 US at 142; *Tackett*, 180 F3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Yuckert*, 482 US at 146 n5; *Tackett*, 180 F3d at 1098. If the sequential disability analysis reaches step five, then the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F3d at 1100. If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1520(g), 416.920(g); *Tackett*, 180 F3d at 1099.

## THE ALJ'S FINDINGS

At step two, the ALJ found that Ms. Huffman had severe impairments of "status post fracture with surgical repair of the left lower extremity and arthritis of the left knee." Tr. 16. At step three, he found that these impairments did not meet or equal a listed disorder (Tr. 17) and that Ms.Huffman retains the RFC to perform light work. Tr. 18. He also limited Ms. Huffman to no more than two hours of standing and walking in an eight-hour workday, no more than occasional climbing, crouching, or kneeling, and no crawling. *Id.* At steps four and five, the ALJ found that Ms. Huffman could not perform her past relevant work, but could perform work in the national economy. Tr. 21-22. Accordingly, the ALJ found her not disabled. Tr. 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F3d 1219, 1222 (9th Cir 2009). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance."

4 - FINDINGS AND RECOMMENDATION

*Bray*, 554 F3d at 1222, quoting *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).  It is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Id.*

 This court must weigh the evidence that supports and detracts from the ALJ's conclusion.

*Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d

715, 720 (9th Cir 1998).  The reviewing court may not substitute its judgment for that of the

Commissioner.  *Id,* citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also*

*Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Variable interpretations of the

evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Burch v.*

*Barnhart*, 400 F3d 676, 679 (9th Cir 2005).  This court, however, may not affirm the ALJ's

findings based upon reasoning the ALJ did not express.  *Bray*, 554 F3d at 1225-26, citing *SEC v.*

*Chenery Corp.*, 332 US 194, 196 (1947).

## **FINDINGS**

 Ms. Huffman challenges the ALJ's evaluation of:  (1) her credibility; (2) medical

evidence pertaining to RFC; (3) her impairments at step two in the Commissioner's sequential

analysis and (4) her ability to perform work in the national economy.  She also asserts (5) that

the ALJ should have further developed the record.

## I. **Ms. Huffman's Credibility**

 The ALJ first found that "[i]n light of the absence of an opinion indicating a limitation

greater than those found in the [RFC], the undersigned finds the claimant's subjective complaints

and alleged limitations are not fully persuasive."  Tr. 20.  But, he later noted, "[c]onsidering the

evidence most favorable to the claimant, the undersigned elects to grant the claimant the benefit

of the doubt, and finds that an additional limitation is warranted." *Id.*  Due to her testimony

regarding pain medication side effects, the ALJ then precluded Ms. Huffman "from work that

involves more than simple and routine tasks."  Tr. 21.

Ms. Huffman challenges the ALJ's findings regarding her activities of daily living,

memory and concentration, and employment.

### A.    <u>Legal Standards</u>

The ALJ must consider all symptoms and pain which "can be reasonably accepted as

consistent with the objective medical evidence and other evidence."  20 CFR §§ 404.1529(a),

416.929(a).  Once a claimant shows an underlying impairment which may "reasonably be

expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ

must provide "clear and convincing" reasons for finding a claimant not credible.  *Lingenfelter,*

504 F3d at 1036, citing *Smolen v. Chater,* 80 F3d 1273, 1281 (9th Cir 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing

court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v.*

*Shalala,* 50 F3d 748, 750 (9th Cir 1995), *citing Bunnell v. Sullivan,* 947 F2d 341, 345-46 (9th Cir

1991) (*en banc*).  The ALJ may consider objective medical evidence and the claimant's

treatment history, as well as the claimant's daily activities, work record, and observations of

physicians and third parties with personal knowledge of the claimant's functional limitations.

*Smolen,* 80 F3d at 1284.  The ALJ may additionally employ ordinary techniques of credibility

evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id.*

The ALJ may not, however, make a negative credibility finding "solely because" the claimant's

symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F3d at 883.

      **B.**    **Testimony**

At the June 29, 2010, hearing before the ALJ, Ms. Huffman did not address her activities of daily living. However, she completed an undated form "Function Report." Tr. 178-85. Ms. Huffman wrote that after awakening, she takes her son to school, does leg exercises, and takes her dog out "a few times" each morning before noon. Tr. 178. She vacuums twice a week, resting once or twice. *Id.* Ms. Huffman visits her grandchildren for an hour in the afternoon, "resting while I'm there." *Id.* She does "minimal care for a lady" with multiple sclerosis; her duties include laundry, feeding her client, giving her client medications, taking her client's dogs out, and reading to her client. *Id.* After returning home, she cooks dinner and does laundry. *Id.*

Ms. Huffman also wrote that she cares for her 15 year-old son and pets. Tr. 179. She can no longer walk as far as she wants, run, jump, lift or carry things, or kneel on her left knee. *Id.* She must sit down when putting on pants. *Id.* She prepares simple meals and "sometimes prepares complete meals." Tr. 180. She does laundry, loads a dishwasher, sweeps floors, and vacuums. Tr. 180. Ms. Huffman shops for food and household items two or three times a month, using a motorized cart. Tr. 181.

Her hobbies include art, camping, crabbing, fishing, and clam digging. Tr. 182, 354. She camps two times per month in the summer and fall, dug clams twice with assistance, but can no longer crab and fish because she cannot get in and out of the boat. Tr. 182. Ms. Huffman's social activities include visiting her grandchildren, watching movies, and emailing friends. *Id.*

7 - FINDINGS AND RECOMMENDATION

Finally, she endorsed limitations in lifting, squatting, bending, standing, reaching, walking, kneeling, and stair climbing.  Tr. 183.  She can lift 20-25 pounds, but squatting and bending are painful.  *Id.*  She can stand 15-20 minutes at time, walk 25-30 feet at a time, and only kneel on her right knee.  *Id.*  She can follow spoken instructions, get along with authority figures, and handle changes in routine.  Tr. 183-84.  She uses a cane when walking.  Tr. 184.

### C.    Analysis

The ALJ rejected Ms. Huffman's allegations of being incapable of all work activity  for several reasons.  First, he cited Ms. Huffman's activities of daily living, specifically caring for her son and pets, performing household chores, driving, emailing friends, and shopping with the use of a motorized cart.  Tr. 19.  The ALJ also noted that the medical record "details further activity, including swimming and camping."  *Id.*  Ms. Huffman argues that the record does not support her ability to perform these activities but, to the contrary, reveals that she no longer goes camping or clam digging and cannot drive.

This court must defer to an ALJ's interpretation of a claimant's activities where reasonable, even if an alternate interpretation more favorable to the claimant arises.  *Rollins v. Massinari*, 261 F3d 853, 857 (9th Cir 2001).  The record shows that Ms. Huffman reported engaging in the activities cited by the ALJ.  Tr. 182.  Although she reported that she can no longer crab or fish, the ALJ did not find that she did.

Ms. Huffman also asserts that the ALJ erroneously found that she can drive, contrary to her testimony at the hearing that she could not drive while taking painkillers.  This assertion must be rejected because Ms. Huffman in fact testified that she did not drive for one week due to

medication side effects. Tr. 35. Thus, the ALJ did not err by identifying and relying on inconsistencies between Ms. Huffman's activities of daily living and her complaints.

Second, the ALJ found that Ms. Huffman did not allege any impairment with her memory or concentration. Ms. Huffman challenges the ALJ's findings regarding her medication side effects. Since this challenge is explicitly restricted to the ALJ's step two findings, it is discussed below.

Third, as further bearing on Ms. Huffman's credibility, the ALJ noted that she had been employed with reduced responsibilities and on a part-time basis which "strongly suggest[s] that her impairment does not prevent her from performing all work activity if her [RFC] is reduced to accommodate her impairment." Tr. 19. Ms. Huffman does not challenge that finding.

In summary, the ALJ did not commit reversible error in his credibility analysis.

## II.    Medical Source Statements

Ms. Huffman argues that the ALJ erroneously ignored various portions of the medical evidence. She essentially asserts that the ALJ should have accorded greater weight to the opinion of her orthopedist, Kimberly Workman, M.D., and less weight to the opinion of a reviewing physician, Linda Jensen, M.D. *Id.*

### A.    Legal Standards

Disability opinions are reserved for the Commissioner. 20 CFR §§ 404.1527(e)(1); 416.927(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than to that of an examining physician. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an

9 - FINDINGS AND RECOMMENDATION

ALJ must give "specific and legitimate reasons" for discrediting a treating physician's opinion in favor of an examining physician's opinion. *Id* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).

**B.    Analysis**

**1.    Dr. Workman**

Dr. Workman treated Ms. Huffman between October 9 and November 12, 2009. Tr. 326-28, 332-36. During this time she noted Ms. Huffman's complaints of her knee pain "getting worse" (Tr. 326) and recommended removal of the surgical hardware. Tr. 328. Dr. Workman also stated that Ms. Huffman would need a knee replacement at some point in the future. *Id.* Finally, Dr. Workman performed hardware removal surgery on Ms. Huffman's left tibia on November 11, 2009. Tr. 339-40.

Contrary to Ms. Huffman's contention, the record does not contain an opinion authored by Dr. Workman articulating any work-related limitations. Instead, it contains only chart notes by Dr. Workman of Ms. Huffman's self-perception of her limitations, including that she "is down to about a 50ft walking tolerance." Tr. 326. Thus, the ALJ did not erroneously ignore any limitations assessed by Dr. Workman.

**2.    Dr. Jensen**

Dr. Jensen reviewed Ms. Huffman's record for Disability Determination Services ("DDS") on January 28, 2009. Tr. 286-93. Dr. Jensen found that Ms. Huffman could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk at least two hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Tr. 287. She found that

Ms. Huffman could occasionally climb, balance, crouch, and crawl, and frequently stoop and kneel.  Tr. 288.  Dr. Jensen assessed no manipulative, visual, or communicative limitations, but restricted Ms. Huffman from working near hazards such as machinery.  Tr. 289-90.

Ms. Huffman argues that these findings are contrary to other medical evidence.  She first points to the opinion of physical therapist Kurt Wessenberg, indicating that she could not bear full weight on her left leg.  On January 16, 2008, Mr. Wessenberg in fact wrote that Ms. Huffman reported "weight bearing as tolerated."  Tr. 307.  On March 5, 2008, Mr. Wessenberg wrote that Ms. Huffman continued to use one crutch for walking, and indicated that she should use a cane rather than the crutch.  Tr. 300.  This evidence does not establish that Ms. Huffman was unable to bear weight for the 12-month period required by the Commissioner's regulations. 20 CFR §§ 404.1509, 416.909.

Ms. Huffman also repeatedly asserts that Dr. Jensen erroneously found "good healing" of her left knee injury.  At the end of her RFC assessment, Dr. Jensen wrote that Ms. Huffman "suffer[ed] a fracture [of the left leg which] required surgery with hardware in place, [x-rays] show good healing with early [signs] of [denegerative joint disease]."  Tr. 291.  A contextual reading of this note suggests that Dr. Jensen characterized the healed fracture as "good;" it does not suggest that Dr. Jensen concluded all aspects of Ms. Huffman's knee impairment were "good."  Further, the ALJ made no finding of "good healing" pertaining to this injury.  For these reasons, Ms. Huffman fails to establish error in Dr. Jensen's annotation.

In conclusion, the ALJ's findings regarding the medical record should be affirmed.

///

///

11 - FINDINGS AND RECOMMENDATION

**III.**    **Step Two Findings**

The ALJ found Ms. Huffman's left leg impairments "severe" at step two.  Tr. 16.  Ms.

Huffman asserts that the ALJ should have also found her obesity, fatigue, and medication side

effects to be severe.

      **A.**    **Step Two Standards**

At step two in the Commissioner's sequential analysis, the ALJ determines if the

claimant has "a severe medically determinable physical or mental impairment" that meets the 12-

month durational requirement.  20 CFR §§ 404.1509, 404.1620(a)(4)(ii), 416.909,

416.920(a)(4)(ii).  If the claimant does not have such a severe impairment, she is not disabled.

*Id.*

Step two findings must be based upon medical evidence.  20 CFR §§ 404.1520(a)(ii);

416.920(a)(ii).  The Commissioner's regulations instruct that an impairment is "not severe" if it

"does not significantly limit your physical or mental ability to do basic work activities."  20 CFR

§§ 404.1521(a); 416.921(a).  The step two inquiry is a "threshold inquiry," *Yuckert*, 482 US at

153, but omissions at step two are harmless if the ALJ's subsequent evaluation considered the

effect of the impairment.  *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007).

      **1.**    **Obesity**

At step two, an ALJ is not required to discuss "the combined effect of a claimant's

impairments," including obesity, " unless the claimant presents evidence in an effort to establish

equivalence."  *Burch v. Barnhart*, 400 F3d 676, 683 (9th Cir 2005).  Ms. Huffman fails to carry

this burden.  Thus, the ALJ did not err by omitting additional limitations stemming from her

obesity.

2.    **Fatigue and Medication Side Effects**

"Fatigue" and "medication side effects" are not medical diagnoses.[2]  A step two

impairment must be established by a medical diagnosis.  20 CFR §§ 404.1520(a)(4)(ii); 416.909;

416.920(a)(4)(ii).  This impairment must "result from anatomical, physiological, or

psychological abnormalities which can be shown by medically acceptable clinical and laboratory

diagnostic techniques.   20 CFR §§ 404.1508; 416.908.  The Commissioner's sequential analysis

later considers fatigue and medication side effects in the course of discussing a claimant's

statements relating to an already-established impairment.  20 CFR §§ 404.1545(a)(3);

416.945(a)(3); *Smolen*, 80 F3d at 1284.  Consideration of limitations stemming from fatigue and

medication side effects, while relevant to a determination of disability, is not relevant in

establishing a step two impairment.

In summary, Ms. Huffman fails to establish error at step two.

IV.    **The ALJ's Duty to Develop the Record**

The ALJ found that the "record contains very little [medical opinion evidence] relating to

[Ms. Huffman's] exertional limitations/capabilities."  Tr. 20.  Based on the "absence of such

opinion," he accepted Dr. Jensen's functional assessment.  *Id.*  Ms. Huffman submits that the

ALJ should have developed the record to support this finding of an "absence" of medical opinion

evidence.

The ALJ must develop the record when the claimant's onset date is ambiguous,

*Armstrong v. Comm'r*, 160 F3d 587, 590 (9th Cir 1998), or when the record is too inadequate for

---

[2]  Ms. Huffman does not allege disability due to chronic fatigue syndrome.

the Commissioner to make a proper disability determination.  20 CFR §§ 404.1513(e),

416.913(e); *Bayliss v. Barnhart*, 427 F3d at 1217.  The ALJ must be "especially diligent" when

the claimant is unrepresented.  *McLeod v. Astrue*, 640 F3d 881, 885 (9th Cir 2011).  That

directive does not apply here because Ms. Huffman was represented by counsel at the hearing

before the ALJ.

While the ALJ must develop a record that is inadequate to make a disability

determination, no authority directs that the ALJ must develop the record simply because it does

not support a finding of disability.  Thus, this argument fails.

**V.    Step Four and Five Findings**

Ms. Huffman also asserts that the ALJ erroneously found that she could perform work in

the national economy at step five in the sequential proceedings.  She points to Dr. Workman's

statement that she could walk 50 feet and her own testimony.

At step five in the sequential proceedings, the ALJ determines if the claimant can

perform work in the national economy.  20 CFR §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  The

ALJ's questions to the vocational expert must include all properly supported limitations.

*Osenbrock v. Apfel*, 240 F3d 1157, 1165 (9th Cir 2001).

As discussed above, the ALJ gave clear and convincing reasons to support his credibility

finding and Dr. Workman did not find that Ms. Huffman could only walk 50 feet.  Because Ms.

Huffman does not establish error in the ALJ's evaluation of her testimony or Dr. Workman's

opinion, she does not establish that the ALJ omitted associated limitations in his step five

findings.  For this reason, the ALJ's step five findings should be affirmed.

*///*

14 - FINDINGS AND RECOMMENDATION

## **RECOMMENDATION**

Ms. Huffman fails to establish reversible error in the ALJ's analysis of the relevant testimony, medical evidence and the ALJ's step five findings. Thus, the Commissioner's decision is based upon correct legal standards and supported by substantial evidence and should be AFFIRMED.

## **SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due September 24, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 6th day of September, 2012.

> s/ Janice M. Stewart____
> Janice M. Stewart
> United States Magistrate Judge